UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LAWRENCE C. RAUSCH, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:06-CV-83 RM |
| ) | |
| TIPPECANOE BEVERAGES, INC. ) | |
| and ANHEUSER-BUSCH, ) | |
| ) | |
| Defendants ) | |

OPINION AND ORDER

Lawrence Rausch was 58 years old when Tippecanoe Beverages, Inc. discharged him from his position as Tippecanoe's Anheuser-Busch Brand Manager in April 2005. Contending he was fired because of his age, he sues Tippecanoe and Anheuser-Busch under the Age Discrimination in Employment Act, 29 U.S.C. § 623. Both defendants have moved for summary judgment and, for the reasons that follow, the court grants both motions.

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). On cross-motions, each movant must individually satisfy the requirements of Rule 56. O'Regan v. Arbitration Forums, Inc., 246 F.3d 975, 983 (7th Cir. 2001).

In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in

his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Turner v. J.V.D.B. & Assoc., Inc., 330 F.3d 991, 995 (7th Cir. 2003). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in its favor. Lawrence v. Kenosha County, 391 F.3d 837, 841-842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'") (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

Fred Zahrt is president (and, with David Zahrt, co-owner) of Tippecanoe Beverages, which promotes and distributes alcoholic beverages. Tippecanoe Beverages is the exclusive wholesaler of Anheuser-Busch products in its territory pursuant to a July 1997 wholesale equity agreement. A regional sales manager for Anheuser-Busch assists Tippecanoe Beverages in marketing Anheuser-Busch products; Jason Pressman held that position during the times relevant to this case.

As Tippecanoe Beverages' brand manager, Mr. Rausch had sales and marketing responsibilities for all products Tippecanoe Beverages distributed. He supervised eight salespersons and two team leaders. His responsibilities included developing sales strategies and action plans, reviewing the salespersons' expense reports, helping draft individual monthly goals for each salesperson, and reviewing point sheets and expense reports the salespersons submitted.

Fred Zahrt says he came to believe that Mr. Rausch's job performance was inadequate. He says he believed that performance and morale had deteriorated that Mr. Rausch wasn't performing various of his duties. Tippecanoe Beverages sales were not what Mr. Zahrt believed they should be. In 2004, Mr. Zahrt relieved Mr. Rausch of management responsibilities for Tippecanoe Beverages' consumer awareness and education programs aimed at problem drinking, and transferred Mr. Rausch's supervision of the sign department to general manager Robert Greski. The sign department is an in-house printer Tippecanoe Beverages uses to create marketing materials. In 2004, Mr. Zahrt learned that Mr. Rausch had ordered Tippecanoe Beverages's graphic specialist Sandy Trusty to produce Dale Earnhardt NASCAR schedules. The same items were available through the Anheuser-Busch catalog at a significantly lower price.

"Point sheets" are monthly goals a sales employee is expected to achieve, and form part of the basis for sales employees' compensation. In October 2004, Mr. Zahrt determined that Jim Jeffries, Mark Eber and Lynn Reed had been falsifying point sheets; Mr. Rausch had signed the point sheets without reviewing

3

them, allowing the sales employees to receive payment for these point sheets. Mr. Rausch says general manager Greski was responsible for Bacardi, the high-end product to which those point sheets related. Because a single point sheet contains reports on both high-end and the regular products, Mr. Zahrt says he held Mr. Rausch responsible for ensuring the point sheets' overall accuracy. In early 2005, Fred Zahrt and his administrative assistant, Michelle Grostefon, concluded from a point sheet that Mr. Rausch had authorized false reports filed by Mark Eber. Mr. Zahrt warned Mr. Eber not to record goals until they were accomplished.

Mr Rausch also was responsible for signing and reviewing sales employees' expense reports. In early 2005, Mr. Zahrt concluded from expense reports that Mike Mavrogenes' fuel expenses were higher, and his gas mileage significantly lower, than other sales employees. Mr. Mavrogenes was fueling his personal car on his company charge card, and Mr. Zahrt says he thought Mr. Rausch should have noticed. Also in early 2005, Mr. Greski discovered that Dwayne Satterfield had been paid incorrectly for an incentive program notwithstanding Mr. Satterfield's inquiry to Mr. Rausch about the matter. Mr. Zahrt took these incidents as evidence of poor performance by Mr. Rausch and his team leaders, which would lead to poor morale among the sales employees.

Statements from other employees underscored that concern. Mr. Zahrt's administrative assistant, Ms. Grostefon, said she withheld questions for fear of Mr. Rausch chastising her, and that sales employees put questions to her rather than to Mr. Rausch. Mr. Zahrt received reports that Mr. Rausch didn't follow

4

Tippecanoe Beverages protocol when performing training ride-alongs with sales employees. Mr. Rausch's frequent unilateral changes to point sheet goals, even after Mr. Zahrt imposed a "drop dead date" after which no changes were to be made, further troubled Mr. Zahrt.

Mr. Rausch's 2005 annual review with Mr. Zahrt and Mr. Greski was to take place in early May. After Mr. Zahrt discussed his concerns with David Zahrt and Mr. Greski, Ms. Grostefon told those three and chief financial officer Jerry Smith that she was spending up to half her time doing weekly reports and redoing other reports that Mr. Rausch would not or (because he didn't know how to use Excel) could not do. She said that neither Mr. Rausch nor the team leaders were verifying sales employees' point sheets, that Mr. Rausch was changing point sheets after the drop dead date, and that the sales force was making about 20 percent of its point sheet goals rather than the anticipated 70 percent. Others in the meeting expressed concern over the limited hours the sales employees seemed to be working, especially on Friday afternoons.

On May 6, 2005, Fred Zahrt, David Zahrt and Bob Greski met with Mr. Rausch and discharged him for the stated reasons that Mr. Zahrt was unhappy with Mr. Rausch's brewery reports, and that Mr. Rausch lacked skills, wasn't dedicated to the job, and didn't interact with other employees. Mr. Rausch was the youngest person in the room.

Other facts are discussed below as applicable.

An age discrimination plaintiff can prove his case — or defeat summary judgment motions — by either of two methods. First, he might prove by direct or circumstantial evidence that he would not have been terminated but for his age. *See, e.g.*, Cohen v. Glenbrook Security Services, Inc., 123 F.3d 438, 443 (7th Cir. 1997); Hong v. Children's Memorial Hospital, 993 F.2d 1257, 1265-1266 (7th Cir. 1993); Randle v. LaSalle Telecommunications, Inc., 876 F.2d 563, 569 (7th Cir.1989). The direct method requires "providing direct evidence, such as an 'outright admission' of discrimination, or presenting sufficient circumstantial evidence. But such circumstantial evidence must point directly to a discriminatory reason for the termination decision." Ptasznik v. St. Joseph's Hospital, 464 F.3d 691, 695 (7th Cir. 2006).

Mr. Rausch says Jason Pressman, Anheuser-Busch's regional compliance coordinator, told Tippecanoe Beverages President Fred Zahrt that Tippecanoe Beverages had too many old salesman and needed to "get young." This evidence, Mr. Rausch argues, constitutes the elusive "smoking gun" of employment discrimination cases. Mr. Rausch's direct evidence argument collapses at a variety of levels.

0       First, Mr. Rausch didn't work for Anheuser-Busch, and Mr. Pressman didn't work for Tippecanoe Beverages. Mr. Pressman was the region sales manager who worked with Tippecanoe Beverages and other distributors, acting as a liason between Anheuser-Busch and its wholesalers. Mr. Pressman advised wholesalers on how to increase beer sales, but played no role in employment decisions. Neither

6

Mr. Pressman nor (under the agreement that governed the distributor relationship) Anheuser-Busch supervised or directed Mr. Rausch's daily activities, evaluated his performance, paid him, provided his wages or benefits, disciplined him, or had any input into any of the terms and conditions of his employment.

Mr. Rausch cites to Clackamas Gastroenterology Associates v. Wells, 538 U.S. 440 (2003), which established a control test to determine whether shareholders and directors of a professional corporation were employees or employers for purposes of the Americans with Disabilities Act's applicability. He also cites the RESTATEMENT (SECOND) OF AGENCY § 2(2) (1957), which defines a "servant" as one whose work is "controlled or is subject to the right to control by the master." He cites, as well, Smith v. Castaways Family Diner, 453 F.3d 971 (7th Cir. 2006), which held that two non-owners of a restaurant were employees because (among other things) their right to control the enterprise was a matter of delegation rather than their own ownership interests. None of these authorities can support a finding that Mr. Rausch was an "employee" of Anheuser-Busch, because Anheuser-Busch's relationship to Mr. Rausch bears no resemblance to any relationship involved in Clackamas Gastroenterology, Castaways Diner, or the RESTATEMENT.

Mr. Rausch also cites to § 605:0009 of the EEOC Compliance Manual (2000), which sets out six factors for consideration in identifying an employer, but that regulation provides no assistance to him. The agreement between Anheuser-Busch and Tippecanoe grants Anheuser-Busch no authority (and to some extent,

7

forecloses such authority) to set rules and regulations concerning the work of Tippecanoe's brand manager, or to supervise the brand manager's work. The record contains no evidence to support an inference that Mr. Rausch reported to anyone at Anheuser-Busch or shared in Anheuser-Busch's profits, losses or liabilities. No evidence in the record suggests that Tippecanoe and Anheuser-Busch intended that Mr. Rausch be an Anheuser-Busch employee.

When seeking a tax abatement for a capital improvement, Fred Zahrt told the Town of Winamac that without the requested tax abatement, Tippecanoe Beverages might fold. From this statement, Mr. Rausch infers that Anheuser-Busch somehow had enough authority over Tippecanoe Beverages to be deemed the joint employer of all Tippecanoe Beverages employees, including Mr. Rausch. No reasonable juror could draw the same inference.

The Age Discrimination in Employment Act holds employers liable for certain acts. No reasonable juror could find that Anheuser-Busch was Mr. Rausch's employer. Anheuser-Busch is entitled to summary judgment.

Tippecanoe Beverages sees the case against it as collapsing at this point as well. It contends that the hearsay rule excludes evidence of Mr. Pressman's alleged discriminatory comment. Mr. Rausch testified at his deposition that Tippecanoe Beverages' general manager, Bob Greski, told Mr. Rausch of a a meeting between Anheuser-Busch's Pressman, Fred Zahrt and Mr. Greski at which Mr. Pressman said Tippecanoe Beverages had one of the oldest sales forces in the area and that Mr. Pressman wanted a younger sales force. Mr. Rausch testified that Mr. Greski

8

said Mr. Pressman left Fred Zahrt with no doubt that Anheuser-Busch wanted a younger sales force at Tippecanoe Beverages.

Mr. Zahrt, Mr. Greski, and Mr. Pressman all denied in their depositions that such a statement was made. Accordingly, Tippecanoe Beverages argues, the record contains no admissible evidence that the alleged statement was made: Mr. Rausch can point to nothing more than Mr. Greski's out of court statement. Mr. Rausch need not point to anything else, because Mr. Greski's statement, as general manager of Tippecanoe Beverages, appears to be admissible against Tippecanoe Beverages pursuant to FED. R. EVID. 801(d)(2)(D). See Bombaci v. Journal Community Pub. Group, Inc., 482 F.3d 979, 985 n.3 (7th Cir. 2007).

While admissible over the hearsay objection, Mr. Pressman's comment is not sufficient to satisfy Mr. Rausch's burden under the direct evidence approach. Mr. Pressman's comment wasn't made in the course of a discussion about Mr. Rausch's employment; Mr. Pressman had no authority (as already discussed) to hire or fire Mr. Rausch; and the comment about needing a younger sales force did not relate to Mr. Rausch, who was not a salesperson. Mr. Pressman's statement was what the cases call a "stray remark" — a comment by someone not connected with the challenged employment decision — and does not amount to sufficient direct evidence to allow a reasonable trier of fact to find for Mr. Rausch. *See* Cerutti v. BASF Corp., 349 F.3d 1055, 1062-63 (7th Cir. 2003); Beatty v. Wood, 204 F.3d 713, 716 (7th Cir. 2000); Chiarmonte v. Fashion Bed Group, Inc., 129 F.3d 391, 397 (7th Cir. 1997).

Mr. Rausch raises a second direct evidence argument. Citing a statement he attributes to Mr. Greski, Mr. Rausch says his decision-maker, Fred Zahrt, refused to promote Sandy Trusty to a sales position because of her gender. Mr. Rausch argues that under Venters v. City of Delphi, 123 F.3d 956, 973 (7th Cir. 1997), a trier of fact may infer from an employment decision based on one illegal factor (sex), that his own employment decision was based on another illegal factor (age). The court assumes that neither party in Venters discussed Federal Rule of Evidence 404(b), but the Venters court wrote,

> Still, remarks and other evidence that reflect a propensity by the decisionmaker to evaluate employees based on illegal criteria will suffice as direct evidence of discrimination even if the evidence stops short of a virtual admission of illegality. ... Proof of this nature supports the inference that a statutorily proscribed factor — race, sex, age, or in this case, religion — was at least a motivating factor in the adverse employment action at issue. ... This in turn activates a burden on the part of the employer to demonstrate that it would have taken the same action against the plaintiff even if the proscribed criterion had played no role in its decision.

123 F.3d at 973.

This reasoning does not apply here, though, because the Venters court wasn't discussing illegal motivating factors as a class. Venters involved a supervisor whose religious beliefs seemed to have infected all his actions and an employee who claimed to have been fired because of her religious beliefs. Neither Venters nor any other authority that Mr. Rausch cites supports the proposition that discrimination based on sex constitutes direct evidence of discrimination based on age.

10

One without sufficient direct evidence of age discrimination may proceed under the indirect method recognized in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). For summary judgment purposes, this method generally requires the plaintiff to satisfy a *prima facie* requirement by pointing to evidence sufficient to establish (1) that he was a member of a protected class, (2) that he was meeting his employer's legitimate performance expectations, (3) that he suffered an adverse employment action, and (4) that substantially younger employees who were similarly situated were treated more favorably. Janiuk v. TCG/Trump Co., 157 F.3d 504, 507 (7th Cir. 1998). Upon such a showing the burden shifts to the employer to articulate (not to prove) a non-discriminatory justification for the adverse employment decision. Barricks v. Eli Lilly and Co., 481 F.3d 556, 559 (7th Cir. 2007). Such a showing requires the plaintiff to identify evidence sufficient to show "'(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the] discharge, or (3) that they [the reasons] were insufficient to motivate [the] discharge.'" Cliff v. Board of School Comm'rs, 42 F.3d 403, 412 (7th Cir. 1994).

Mr. Rausch's evidence falls dramatically short of a prima facie case. At 58 years of age, of course, he is within a protected class, and the loss of his job amounted to an adverse employment action. He has not, however, pointed to a substantially younger Tippecanoe Beverages employee who was treated more favorably. Mr. Greski, who took over Mr. Rausch's duties temporarily, is a year

11

older. 65-year-old Burt Smith was then promoted to the Brand Manager position, with Mr. Greski resuming the position when Mr. Smith retired. Mr. Rausch wasn't replaced by someone significantly younger (indeed, he was replaced by people older than he), so no inference of age-based discrimination arises from Mr. Rausch's attempted prima facie case. See O'Connor v. Consolidated Coin Caterers Corporation, 517 U.S. 308, 313 (1996).

Citing Paluck v. Gooding Rubber Co., 221 F.3d 1003,1012 (7th Cir. 2000), Mr. Rausch argues that the slightly different reduction-in-force analysis is proper in his case. If undischarged employees absorbed the dismissed worker's duties, the plaintiff need only show either that significantly younger workers were treated better or that his duties were absorbed by (not that he was replaced by) significantly younger workers. Merillat v. Metal Spinners, Inc., 470 F.3d 685, 690 n.1 (7th Cir. 2006). The summary judgment record doesn't support Mr. Rausch's contention that his termination was part of a reduction in force. That analysis still would apply if other employees had absorbed his duties, but the record does not bear out Mr. Rausch's assertion that others absorbed his duties. Burt Smith replaced Mr. Rausch as brand manager, and the record would not support a finding that his duties as brand manager differed significantly from Mr. Rausch's duties.

As outlined earlier in this opinion, a summary judgment court must view the record as favorably to the non-movant as the record will allow. The court struggled to craft the statement of facts in the light most favorable to Mr. Rausch,

12

whose briefs contain an array of assumed facts of unexplained relevance. Mr. Rausch tells the court that David Zahrt used Tippecanoe Beverages for Republican electioneering and that Mr. Greski sent raunchy e-mails; how such tidbits might help the court decide the summary judgment motions is left unexplained. Mr. Rausch's briefs also offer a spectrum of apparently groundless speculations: that Mr. Greski had a secret crush (or more) on Ms. Grostefon; that Tippecanoe Beverages might have charged Anheuser-Busch for printing done for political campaigns; and that Mr. Pressman must have been ecstatic when Tippecanoe Beverages discharged Mr. Rausch. Finally, Mr. Rausch's briefs are peppered with phrases apparently designed to lead the reader to think less of Mr. Rausch's adversaries ("Fred, smug, untouchable, comfortable Fred," "Fred's pervasive conceit that he is above the law," "Grostefon's . . . desire to pull the rug from under Chet"), perhaps to find them less credible, though credibility is not an issue at the summary judgment stage.

Why a summary judgment brief might contain such things is unclear. A summary judgment court faces difficult legal issues, and the airing of suspicions or dirty laundry is unhelpful in resolving such issues. Such material is skimmed rather than studied, so the reader might reach past the aspersions to relevant facts or argument. The risk always inheres that the skimming reader will miss relevant facts or argument sown within the aspersions. The court has struggled to avoid that risk in this case, but the sheer quantity of irrelevant or assumed facts, apparently groundless speculations, and personal attacks, coupled with the

absence of any evidence whatsoever that Mr. Rausch's age played any part in Tippecanoe Beverages's decision to discharge him, leave the court wondering whether it missed something significant.

For the foregoing reasons, the court GRANTS the defendants' motions for summary judgment (Docket #36 and #42). The clerk shall enter judgment accordingly.

SO ORDERED.

ENTERED:   August 3, 2007

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court